UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE COINBASE CUSTOMER DATA SECU-RITY BREACH LITIGATION | **OPINION AND ORDER**<br><br>25-md-3153 (ER) |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

RAMOS, D.J.:

    The claims in these consolidated putative class actions arise out of an alleged customer data security breach.  Before the Court are applications from two groups of plaintiffs' counsel seeking to serve as interim co-lead counsel, liaison counsel, or member of a plaintiffs' executive committee.  For the reasons set below, the Court appoints Greenbaum Olbrantz LLP, Freedman Normand Friedland LLP, and Ahdoot & Wolfson PC as interim co-lead counsel.

## I.     BACKGROUND

    This litigation involves twenty cases filed against Coinbase Global, Inc. and its subsidiary Coinbase, Inc. (collectively "Coinbase") who allegedly failed to invest the resources necessary to protect their customers' personal information and did not mitigate the risks presented by the data breach.  The twenty actions, originally filed in multiple districts, were consolidated and transferred to this district by the Judicial Panel on Multidistrict Litigation ("JPML") under the caption, "In re Coinbase Customer Data Security Breach Litigation," and docket number, 25-md-3153.  Docs. 1, 3.

    Two applications have been filed concerning the appointment of interim class counsel for the putative class:  (1) Scott+Scott, together with seven other law firms, seeks

to be appointed interim co-lead counsel, liaison counsel, or member of plaintiffs' executive committee ("Scott Group")[1] and (2) Greenbaum Olbrantz, along with two other law firms, seeks to be appointed interim co-lead counsel ("Greenbaum Group").[2]

## II.    LEGAL STANDARD

Rule 23(g)(3) permits the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *In re Interest Rate Swaps Antitrust Litigation*, No. 16 MD 2704 (PAE), 2016 WL 4131846, at *2 (S.D.N.Y. Aug. 3, 2016) (quoting Manual for Complex Litigation, Fourth ("MCL") § 21.11 (2004)).

The same factors that apply in choosing class counsel at the class certification stage apply in choosing interim class counsel. *See In re Crude Oil Commodity Futures Litigation*, No. 11 Civ. 3600 (WHP), 2012 WL 569195, at *1 (S.D.N.Y. Feb. 14, 2012). Specifically, "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).  The Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other

---

[1] The Scott Group includes Scott+Scott, Kantrowitz Goldhamer, Clayeo C. Arnold, Israel David, Tycko & Zavareei, Schubert Jonckheere, Milberg Coleman, and Kopelowitz Ostrow.  In their application, Joseph P. Guglielmo, Melissa R. Emert, and M. Anderson Berry seek to be appointed interim co-lead counsel.  Israel David seeks to be appointed liaison counsel.  Sabita J. Soneji, Amber L. Schubert, John J. Nelson, and Ken Grunfeld seek to be appointed members of the plaintiffs' executive committee.  This group represents plaintiffs in sixteen out of twenty member cases.

[2] The Greenbaum application seeks to appoint Greenbaum Olbrantz LLP, Freedman Normand Friedland LLP, and Ahdoot & Wolfson PC as interim co-lead counsel.  This group represents plaintiffs in two member cases as well as *Estrada v. TaskUs, Inc*, a related case where Coinbase customers sued a vendor of Coinbase for the same data breach.  In the same application, the Greenbaum Group also seeks to be appointed interim co-lead counsel in *Estrada v. TaskUs, Inc*., which will be decided in a separate order.

> complex litigation, and the types of claims asserted in the
> action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing
> the class.

Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  For example, the Court should ensure that the counsel appointed will fairly and adequately represent all of the parties on their side and charge a reasonable rate.  MCL § 10.22.

"If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2). According to the Manual for Complex Litigation, the most important factor the Court should consider is achieving efficiency and economy without jeopardizing fairness to the parties.  MCL § 10.221.

## III.    DISCUSSION

The Court is confident that each group seeking appointment possesses the necessary experience in handling class action, multidistrict litigation, and data breach claims, as required by Rule 23(g).  *See* Fed. R. Civ. P. 23(g)(1)(A)(ii).  Although the Scott Group includes more attorneys experienced in data breach claims, the type of claims asserted in this action, the Greenbaum Group also possess sufficient expertise to adequately represent the class.  *See, e.g.,* Doc. 14 at 9–14 (Scott Group); Doc. 20 at 16-20 (Greenbaum Group).  For example, Tina Wolfson from Ahdoot & Wolfson has led numerous data privacy cases where she helped her clients secure millions of dollars of damages.[3]  Doc. 20-3 at 2.  She also has extensive experience in multidistrict litigation.[4]

---

[3] Wolfson has successfully litigated eleven data privacy cases with settlement ranging from $14 to $150 million for millions of class members. Doc. 20-3 at 2.

[4] Wolfson held leadership position in eight multidistrict litigation matters.  Doc. 20-3 at 4.

*Id.* at 4.  Moreover, lawyers from Freedman Normand Friedland have represented plaintiffs in multiple cases involving cryptocurrency, which is the asset at issue in the present case.[5]  Doc. 20 at 16–17.  Greenbaum Olbrantz also has experience handling complex litigations.[6]  *Id.* at 20.

Other Rule 23(g) factors also weigh in favor of appointing the Greenbaum Group as interim co-lead counsel.  *See* Fed. R. Civ. P. 23(g).  The Greenbaum Group has done significantly more work in identifying and investigating potential claims in this action.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i).  Specifically, the Greenbaum Group has put substantial efforts into investigating the potential source of the breach.  According to the group, Greenbaum Olbrantz is the first entity to publicly identify TaskUs, a Coinbase vendor located in India, whose employees allegedly leaked the customer data at issue, as the central actor in the data breach.  The Greenbaum Group interviewed ex-employees of TaskUs, hired cryptocurrency investigators to trace the funds involved, cooperated with a whistleblower from TaskUs who is willing to be deposed on the data breach, and identified internal security flaws that led to the breach.  Doc. 20 at 2, Doc. 20-1 at 5.  Excluding the Greenbaum Group from the litigation might lead to loss of evidence and duplication of efforts, prejudicing plaintiffs' interests.  *See In re Air Cargo Shipping Services Antitrust Litigation*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (appointing the counsel who has conducted substantial investigation into the claims to avoid forfeiting the benefits of their work).

---

[5]  Lawyers from Freedman Normand Friedland represented plaintiffs in the following cases involving cryptocurrency:  *Baton v. Ledger SAS*, No. 3:21-cv-02470 (N.D. Cal. filed Apr. 6 2021); *Kleiman v. Wright*, No. 18-CV-80176 (S.D. Fla. filed Feb. 14, 2018); and *LetsGoBrandon.Com Foundation v. National Association of Stock Car Racing, Inc.*, No. 23-002831 CA 01 (44) (Fla. Cir. Ct.).  Doc. 20 at 16–17.  Jordana Haviv from Freedman Normand Friedland also led a mass arbitration involving hacked cryptocurrency accounts.  Doc. 20 at 17–18.

[6]  Carter Greenbaum from Greenbaum Olbrantz was involved in multiple high-stake class actions, including *Ligado Networks LLC v. United States*, 23-cv-1797 (Fed. Ct. Cl. filed Oct. 12, 2023) and *Negocios Libertad LLC v. Paine Schwartz Partners et al.*, No. 2023-0621-PAF (Del. Ch. filed June 15, 2023).

Although the Scott Group argues that they have also done substantial work on the case, the work they list is identified in conclusory terms or unrelated to investigating or identifying potential claims. *See* Fed. R. Civ. P. 23(g)(1)(A)(i). Specifically, they argue that they have "identified and spoken with potential fact witnesses," and conducted "factual and legal investigation into the claims" in a primarily conclusory manner. Doc. 14-1 at 9; Doc. 22 at 1. They also describe how they argued for centralization of related cases before JPML, communicated with clients, drafted and edited pleadings, and coordinated with other counsel. Doc. 14-1 at 9; Doc. 22 at 1. During the hearing on November 24, 2025, the Scott Group argued that they've done substantial work to identify additional third-party vendor defendants. The Greenbaum Group, however, has also identified additional defendants and went further by sending them notices pursuant to the California Consumer Privacy Act. By comparison, therefore, the Greenbaum Group has put more effort into identifying and investigating potential claims in this action.

Moreover, the leadership structure proposed by the Scott Group raises efficiency concerns. *See* Fed. R. Civ. P. 23(g)(1)(B). The Scott Group advocates for the appointment of a four-attorney plaintiffs' executive committee. Doc.14-1 at 1. But appointing a formal executive committee is neither necessary nor beneficial to plaintiffs in the present case. Plaintiffs' executive committees are most commonly appointed when group members have sufficiently divergent interests to justify representing them in decision making. *In re Enzo Biochem Data Security Litigation*, No. 23 Civ. 4282 (AYS), 2023 WL 6385387, at *3 (E.D.N.Y. Sept. 29, 2023) (quoting MCL § 10.221). Absent such need, courts generally decline appointment of executive committees due to cost and efficiency concerns. *See, e.g.*, *In re Crude Oil Commodity Futures Litigation*, 2012 WL 569195, at *2 (declining to appoint an executive committee because it can lead to substantially increased costs and unnecessary duplication of efforts). In the present case, no divergent interests among plaintiffs have been identified. The Manual for Complex Litigation requires the Court to achieve efficiency and economy without jeopardizing

fairness to the parties when appointing class counsel.  MCL § 10.221.  Thus, at this juncture, the Court finds that it is not necessary to appoint a plaintiffs' executive committee.

## IV.    CONCLUSION

For the aforementioned reasons, plaintiffs' application to appoint Greenbaum Olbrantz LLP, Freedman Normand Friedland LLP, and Ahdoot & Wolfson PC as interim co-lead counsel is GRANTED.  The Scott Group's application regarding the appointment of counsel is DENIED.  The Clerk of the Court is respectfully directed to terminate the motions.  Docs. 10, 14, 19.

It is SO ORDERED.

Dated:    December 5, 2025
          New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.